UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Docket No. 08-cr-187-P-S |
| JAMES TOBIN, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S PENDING MOTIONS**

Before the Court are Defendant's Motion to Dismiss for Vindictive Prosecution (Docket # 16), Motion to Dismiss for Lack of a Verbatim Transcript (Docket # 17), Motion for a Bill of Particulars (Docket # 18), Motion for Expanded Voir Dire (Docket # 19), and Motion to Strike Surplusage from the Indictment (Docket # 20). The Court heard oral argument on February 9, 2009. As explained herein, the Court GRANTS Defendant's Motion to Dismiss for Vindictive Prosecution (Docket # 16) and finds all other motions MOOT as a result of this ruling.

**I.   BACKGROUND[1]**

Defendant James Tobin served as New England Regional Director of the Republican National Committee and the New England Chairman of the National Republican Senatorial Committee. Shortly before the 2002 general election, Tobin spoke with Charles McGee, Executive Director of the New Hampshire Republican State Committee, who proposed a phone-jamming operation to disrupt the New Hampshire Democratic Party's operations on election day.

---

[1] The Court describes the facts as alleged in the indictment, as it must at this stage. See Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952). It otherwise relies upon and directs interested readers to the detailed factual narratives contained in prior related decisions. See United States v. Tobin, 480 F.3d 53, 54-55 (1st Cir. 2007); United States v. Tobin, 545 F. Supp. 2d 189, 190-92 (D.N.H. 2008); United States v. Tobin, 552 F.3d 29, 30-31 (1st Cir. 2009).

Tobin allegedly referred McGee to Allen Raymond, who operated a telephone services vendor that served political candidates and campaigns, and called Raymond to tell him to expect McGee's call. McGee and Raymond subsequently developed a plan to tie up the phone lines of Democratic Party offices and the firefighters' union in order to paralyze their get-out-the-vote efforts. On election day, hundreds of calls were placed to six phone numbers, disrupting the recipients' telephone lines for approximately two hours. The scheme was ultimately aborted at the direction of John Dowd, McGee's superior.

On or about October 14, 2003, Tobin met voluntarily with the government to discuss his participation in the phone-jamming operation. During this period, the government also interviewed Raymond and McGee, who later agreed to cooperate and plead guilty. By the time it was considering charges against Tobin in November 2004, the government had concluded that Tobin had not been truthful during his interview on October 14, 2003. (See Feb. 9, 2009 Tr. (Docket # 52) at 45:15-22.)

On December 1, 2004, a federal grand jury in the District of New Hampshire returned an indictment charging Tobin with four different felonies based on the federal telephone harassment statute, 47 U.S.C. § 223.[2] After Tobin attacked the initial indictment, the government obtained a superseding indictment, adding a civil rights

---

[2] The initial New Hampshire indictment charged conspiracy to violate 47 U.S.C. § 223(a)(1)(C) (in violation of 18 U.S.C. § 371); aiding and abetting violation of 47 U.S.C. § 223(a)(1)(C) (in violation of 18 U.S.C. § 2); conspiracy to violate 47 U.S.C. § 223(a)(1)(D) (in violation of 18 U.S.C. § 371); and aiding and abetting violation of 47 U.S.C. § 223(a)(1)(D) (in violation of 18 U.S.C. § 2). (See Ex. 14 to Def.'s Mot. (Docket # 16-16).)

charge and consolidating the two conspiracy counts.[3] In neither indictment did the government charge Tobin with making false statements.

Tobin was tried in December 2005. The jury convicted him of one count of conspiracy and one count of aiding and abetting, but acquitted him of conspiring to violate civil rights.[4] The counts of conviction carried a combined maximum statutory term of seven years' imprisonment. In May 2006, Chief Judge McAuliffe sentenced Tobin to ten months' imprisonment followed by two years of supervised release, and a fine of $10,000.

Tobin appealed the conviction, challenging a jury instruction and the sufficiency of the evidence. On March 21, 2007, the First Circuit agreed that the challenged instruction was overbroad and prejudicial, vacated the conviction, and remanded to allow the district court to address a question of statutory interpretation. See United States v. Tobin, 480 F.3d 53, 58, 62 (1st Cir. 2007) ("Tobin I"). Eleven months later, the district court concluded that 47 U.S.C. § 223(a)(1)(D) demands "a specific purpose to cause emotional upset," and, finding that the government could not satisfy this requirement, entered a judgment of acquittal on the remanded charges. United States v. Tobin, 545 F. Supp. 2d 189, 193 (D.N.H. 2008). The government promptly noticed its appeal, which was fully briefed by September 12, 2008.

On October 9, 2008, while the government's appeal to the First Circuit was still pending, a federal grand jury returned the instant indictment charging Tobin with two

---

[3] The superseding New Hampshire indictment charged conspiracy against rights (in violation of 18 U.S.C. § 241); conspiracy to violate 47 U.S.C. §§ 223(a)(1)(C) and 223(a)(1)(D) (in violation of 18 U.S.C. § 371); aiding and abetting violation of 47 U.S.C. § 223(a)(1)(C) (in violation of 18 U.S.C. § 2); and aiding and abetting violation of 47 U.S.C. § 223(a)(1)(D) (in violation of 18 U.S.C. § 2). (See Ex. 16 to Def.'s Mot. (Docket # 16-18).)

[4] The Government had previously moved to dismiss the charges predicated on 47 U.S.C. § 223(a)(1)(C). See Tobin, 480 F.3d at 55.

counts of making false statements during his interview on October 14, 2003, in violation of 18 U.S.C. § 1001(a)(2). The indictment was returned just days before the five-year statute of limitations expired. Count One alleges that Tobin stated that it was McGee's idea to contact Raymond; the government claims that Tobin referred McGee to Raymond, with whom McGee was previously unacquainted. Count Two alleges that Tobin stated that when he first called Raymond, Raymond and McGee had already discussed the phone-jamming operation; the government claims that Tobin spoke with Raymond before McGee contacted Raymond. These false statements counts carry a combined maximum statutory term of ten years' imprisonment.

On January 7, 2009, the First Circuit affirmed the district court's interpretation of 47 U.S.C. § 223(a)(1)(D), thus ending the New Hampshire prosecution. See United States v. Tobin, 552 F.3d 29, 34 (1st Cir. 2009). Tobin now moves to dismiss the instant indictment for vindictive prosecution. Specifically, he claims that the government charged him with making false statements only because he successfully appealed his New Hampshire conviction.

## II. LEGAL STANDARD

"A vindictive prosecution—one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right—violates a defendant's Fifth Amendment right to due process." United States v. Jenkins, 537 F.3d 1, 3 (1st Cir. 2008). Indeed, courts have long abided the "uncontroversial principle" that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" United States v. Goodwin, 457 U.S. 368, 372 (1982) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)). Of course, "the very

4

purpose of instituting criminal proceedings against an individual is to punish; therefore, the mere presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative." United States v. Aviles-Sierra, 576 F. Supp. 2d 235, 237 (D.P.R. 2008) (citation and internal punctuation omitted). Thus, a defendant may be penalized for violating the law, but not punished for exercising his rights. See Goodwin, 457 U.S. at 372.

"A defendant may establish a vindictive prosecution either (1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." Jenkins, 537 F.3d at 3. Although Tobin asserts both actual and presumptive vindictiveness, he emphasizes the latter.[5] Once raised, the government must rebut a presumption of vindictiveness "by showing objective reasons for its charges," such as the discovery of new evidence. Id.; see also United States v. Lanoue, 137 F.3d 656, 665 (1st Cir. 1998).

### III. DISCUSSION

#### A. Presumption of Vindictiveness

In short, these circumstances present a quintessential appearance of vindictiveness. Indeed, the sequence of events alone might well justify a presumption of vindictiveness; courts view quite skeptically the government's decision to file more severe charges following a defendant's successful appeal of his conviction. See, e.g., Blackledge v. Perry, 417 U.S. 21, 28-29 (1974); United States v. Cooper, 461 F.3d 850,

---

[5] Regarding actual vindictiveness, Tobin points to a post-appeal meeting during which the government summarily rejected defense counsel's request to dismiss the New Hampshire charges and allegedly threatened additional charges. The government rejects Tobin's characterization of that meeting. In any event, the Court need not reach the question of actual vindictiveness in light of its ultimate conclusion.

5

856 (7th Cir. 2006); United States v. Rosenthal, No. CR 02-0053, 2007 WL 801647, at *2 (N.D. Cal. Mar. 14, 2007); cf. Aviles-Sierra, 576 F. Supp. 2d at 239 n.2 (distinguishing the filing of additional charges during pre-trial plea negotiations or after a mistrial).[6] But here there was even more.

First, the government has not identified any newly discovered evidence that might justify its charging decisions. Compare Lanoue, 137 F.3d at 665, with United States v. Wood, 36 F.3d 945, 947 (10th Cir. 1994), and United States v. Cafiero, 292 F. Supp. 2d 242, 247-48 (D. Mass. 2003). It possesses the same evidence today as four years ago, and could have readily brought false statements charges before the initial indictment, the superseding indictment, or, most importantly, Tobin's appeal. See United States v. Jenkins, 504 F.3d 694, 700 (9th Cir. 2007); Lovett v. Butterworth, 610 F.2d 1002, 1007 (1st Cir. 1979). Instead, it chose to wait until October 9, 2008, nearly three years after the trial and just days before the five-year statute of limitations expired. See Wood, 36 F.3d at 947 (affirming dismissal of subsequent indictment returned more than two years after initial trial).[7]

Moreover, courts must assess the likelihood of prosecutorial vindictiveness with the doctrine's "prophylactic" purposes in mind. See Jenkins, 504 F.3d at 700. The vindictive prosecution doctrine seeks not only to alleviate the accused's apprehension of persecution but also to prevent the chilling of "the exercise of legal rights by other

---

[6] The government dedicates much of its Response to the line of cases denying vindictive prosecution claims in the context of pre-trial plea negotiations. (See Government's Resp. (Docket # 28) at 16.) But Tobin challenges the government's filing of more severe charges following his successful appeal, a post-trial decision "much more likely to be improperly motivated" than a prosecutor's decision to file additional charges before trial. United States v. Goodwin, 457 U.S. 368, 381 (1982).

[7] In addition, the government conceded during oral argument that it never notified Tobin before or during trial that he faced potential false statements charges if successful on appeal. (See Feb. 9, 2009 Tr. (Docket # 52) at 45:23-46:3.)

6

defendants who must make their choices under similar circumstances in the future." Id. (citation and internal punctuation omitted); see also North Carolina v. Pearce, 395 U.S. 711, 724 (1969); Lovett, 610 F.2d at 1006-07.  And the potential for future chill surely exists when the government—in fact, some of the very same prosecutors—responds to a thwarted, publicly criticized initial prosecution by filing more severe charges that could have been brought years ago.  See Rosenthal, 2007 WL 801647, at *2-3, 5-6; United States v. López, 854 F. Supp. 41, 45 (D.P.R. 1994); see also Lauren R. Dorgan, *New Indictments Filed in Phone-Jamming Case*, Concord Monitor, Oct. 15, 2008; Lauren R. Dorgan, *Panel Asks If Justice Slowed Phone Inquiry*, Concord Monitor, Dec. 27, 2007.  In sum, a reasonable observer might well perceive the instant prosecution as the government's punitive attempt at mere "self-vindication."  United States v. Falcon, 347 F.3d 1000, 1004 (7th Cir. 2003) (citation and internal punctuation omitted); see also Rosenthal, 2007 WL 801647, at *3.

The government's lone objection to a presumption of vindictiveness concerns the severity of the false statements charges.[8]  The government stresses that the presumption typically arises when the subsequent charges are more severe than the initial charges.  It offers as the appropriate baseline all four counts of the superseding indictment, which carried a nineteen-year combined statutory maximum.  Under this theory, the false statements charges, which carry a ten-year combined statutory maximum, are less severe than the initial charges.[9]  (See Government's Resp. (Docket # 28) at 13-14.)  In response,

---

[8] In fact, the government conceded during oral argument that vindictiveness ought to be presumed if the Court finds the instant charges to be more severe than the initial charges.  (See id. at 41:16-42:3.)

[9] In an attempt to mitigate the severity of the false statements charges, the government represented during oral argument that it would not seek a sentence above the applicable advisory Guidelines range (zero-six months' imprisonment) in the event of conviction.  (See id. at 36:17-22; see also Government's Resp. (Docket # 28) at 14.)  But the government may not avoid the consequences of its charging decision simply

7

Tobin suggests that the appropriate baseline is the sentence imposed after conviction: ten months' imprisonment.

The government fails to cite any authority in support of its thesis, which appears to conflict with numerous precedents. See, e.g., Lanoue, 137 F.3d at 664-65; Wood, 36 F.3d at 946; Lovett, 610 F.2d at 1004-05. Indeed, in its next breath, the government concedes that "it is not realistic to focus solely on statutory maximums." (See Government's Resp. (Docket # 28) at 14.) Even if it were, the two counts of conviction, which carried a seven-year combined statutory maximum, provide a more reasonable baseline than all four superseding counts, two of which resulted in dismissal or acquittal. Furthermore, at the time the government filed the instant charges, Chief Judge McAuliffe had already sentenced Tobin to ten months' imprisonment. Using either the counts of conviction or the sentence as a baseline, the false statements charges threaten the "potential for increased punishment" and are thus more severe. Lovett, 610 F.2d at 1005.

In conclusion, Tobin has presented circumstances—including sequence, the absence of any new factual developments, and exposure to more severe charges—that "reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." Jenkins, 537 F.3d at 3. The government's solitary objection regarding severity is unavailing.[10] Thus, the Court turns to the government's rebuttal.

---

by promising to recommend a lenient sentence after it becomes convenient to do so. Moreover, the Court retains the discretion to impose a variant sentence irrespective of the government's recommendation. See United States v. Politano, 522 F.3d 69, 71-72 (1st Cir. 2008). Thus, the government's assurances do not meaningfully diminish the "potential for increased punishment" here. Lovett, 610 F.2d at 1005.

[10] The Court observes that the government did not attempt to justify the instant charges, which pertain to Tobin's alleged false statements to the FBI, as factually unrelated to the initial charges, which concerned Tobin's alleged role in the phone-jamming scheme. In two circuits, a district court may not presume vindictiveness when the conduct underlying the initial and subsequent charges is unrelated. See Williams v. Bartow, 481 F.3d 492, 502 (7th Cir. 2007); Humphrey v. United States, 888 F.2d 1546, 1549 (11th Cir. 1989). Other courts have declined to impose such a barrier. See United States v. Jenkins, 504 F.3d 694,

### B. Rebuttal of Presumption of Vindictiveness

To rebut adequately a presumption of vindictiveness, the government must demonstrate "objective reasons for its charges." Id.; see also Goodwin, 457 U.S. at 376 n.8 (requiring "objective evidence justifying the prosecutor's action."); Rosenthal, 2007 WL 801647, at *2 (characterizing burden as "heavy"). Here, those reasons do not include several that the government routinely invokes, such as newly discovered evidence or intervening criminal activity. See Lanoue, 137 F.3d at 665; Aviles-Sierra, 576 F. Supp. 2d at 239; Lovett, 610 F.2d at 1006 n.10. The government does not cite any material change in the law of false statements or suggest that it recently secured jurisdiction over the instant charges. See United States v. Marrapese, 826 F.2d 145, 149 (1st Cir. 1987); United States v. Ward, 182 Fed.Appx. 779, 788 (10th Cir. 2006). Nor does the government claim to have communicated to Tobin its intent to pursue false statements charges before or during his trial. See Rosenthal, 2007 WL 801647, at *4. In fact, it concedes that it never notified him of any such possibility. (See Feb. 9, 2009 Tr. (Docket # 52) at 45:23-46:3.)

Rather, the government's loss on appeal constitutes its primary justification: "the Maine Indictment was brought in response to unforeseen legal infirmities identified in Tobin I with the two New Hampshire counts of conviction." (Government's Resp. (Docket # 28) at 12-13.) By October 2008, the government anticipated that the First Circuit would affirm Tobin's acquittal. Because it would have been "irresponsible" to

---

700-01 (9th Cir. 2007); United States v. Wood, 36 F.3d 945, 945-46 (10th Cir. 1994); see also United States v. Garza-Juarez, 992 F.2d 896, 907 (9th Cir. 1993) ("The presumption may be found more readily when the same conduct forms the basis for both indictments, but this is not essential to a showing of vindictiveness."). In light of the government's waiver of this issue and the lack of controlling First Circuit authority, the Court concludes that the absence of pure factual relatedness does not preclude a presumption of vindictiveness. Cf. United States v. Capozzi, 486 F.3d 711, 718 (1st Cir. 2007) (describing waiver of arguments not seasonably addressed to the trial court).

9

allow Tobin to go unpunished, the government decided to pursue false statements charges. (Id. at 19.)

This will not do. The aforementioned "legal infirmities"—previously identified by Tobin and thus hardly "unforeseen"[11]—were diagnosed by the First Circuit only because Tobin exercised his right to appeal; the government's explanation, though sincere and entirely plausible, justifies nothing. A loss on appeal may occasion the consideration of new charges, but it cannot justify the government's decision to bring those charges. To rebut a presumption of vindictiveness, the government must offer more. See Lovett, 610 F.2d at 1006 (suggesting that the government must offer "new facts unrelated to the appeal").

The government's secondary justifications are also unavailing. It cites concerns about venue that might have complicated a false statements prosecution in the District of New Hampshire, but then concedes that "venue has been upheld in districts other than that in which the statement was initially made." (Government's Resp. (Docket # 28) at 17.) See United States v. Salinas, 373 F.3d 161, 166-67 (1st Cir. 2004); United States v. Ringer, 300 F.3d 788, 790-92 (7th Cir. 2002). Furthermore, this explanation does not address the critical issue of timing. Concerns about venue might justify the government's decision not to bring false statements charges in New Hampshire; they do not justify the

---

[11] In an attempt to distinguish this case and to justify its conduct, the government characterizes its loss on appeal as a "surprise" that resulted from a change in the "legal landscape." (Government's Resp. (Docket # 28) at 15.) Tobin moved to dismiss the initial New Hampshire indictment in April 2005 because the factual allegations did not support the requisite intent. (See Ex. 1 to Def.'s Reply (Docket # 39-2).) The government responded in May 2005 by obtaining a superseding indictment, in which it maintained the contested §§ 223(a)(1)(C) and 223(a)(1)(D) charges. Under such circumstances, the government may claim disappointment but not surprise.

In some cases, the government's decision to bring new charges might be perceived as less vindictive when its initial loss is attributable to a new construction of a statute. But these circumstances do not warrant such a perception. Moreover, to rigidly interpret the doctrine of vindictive prosecution more narrowly when a defendant has successfully appealed on novel as opposed to well-established grounds would discourage defendants from advancing novel arguments on appeal.

10

decision to bring false statements charges in Maine only after Tobin's successful appeal in New Hampshire.

The government also asserts that the false statements prosecution will be "easier" than retrying the superseding charges in New Hampshire. (Government's Resp. (Docket # 28) at 17.) In Lanoue, the First Circuit endorsed the prosecutor's decision to bring a subsequent charge that was "relatively simple to prove" instead of retrying two charges that had been reversed on appeal. See 137 F.3d at 666. But here, there is no election to make: the false statements charges are the government's only remaining hope.

Finally, the government suggests without elaboration that this prosecution serves its long-held objective of inducing Tobin's cooperation. (See Government's Resp. (Docket # 28) at 16 n.6.) But the desire to encourage cooperation can be offered to justify most prosecutions, legitimate and vindictive alike. Such generic explanations, unaccompanied by any demonstration that Tobin's cooperation is genuinely needed or otherwise unavailable, will not redeem an "inherently suspect" indictment. Wood, 36 F.3d at 947.

In conclusion, the government has failed to satisfy its burden of identifying objective facts that dispel the appearance of vindictiveness. To be sure, courts must tread lightly when assessing prosecutorial charging decisions. "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." United States v. Batchelder, 442 U.S. 114, 124 (1979). These decisions are necessarily informed by sensitive judgments about dangerousness, deterrence, and enforcement priorities, which courts ought not readily second-guess. See United States v. Stokes, 124 F.3d 39, 45 (1st Cir. 1997). Moreover, too expansive an

application of the vindictive prosecution doctrine might create perverse incentives for prosecutors to bring all plausible charges initially, lest they lose the opportunity to pursue them. This result would hardly redound to the benefit of defendants.

That said, the vindictive prosecution doctrine imposes critical "constitutional limits" upon the exercise of prosecutorial discretion. Lovett, 610 F.2d at 1005 (quoting Bordenkircher, 434 U.S. at 365). Those limits protect all current and future criminal defendants, including those whose conduct may be properly described as "insidious" or "thoroughly bad." Tobin, 545 F. Supp. 2d at 194; Tobin, 552 F.3d at 34. And by filing more severe charges following Tobin's successful appeal without sufficient justification, the government exceeded those limits here.

## IV. CONCLUSION

For the reasons set forth herein, the Court GRANTS Defendant's Motion to Dismiss for Vindictive Prosecution (Docket # 16) and DISMISSES the Indictment (Docket # 1). In light of this ruling, Defendant's Motion to Dismiss for Lack of a Verbatim Transcript (Docket # 17), Motion for a Bill of Particulars (Docket # 18), Motion for Expanded Voir Dire (Docket # 19), and Motion to Strike Surplusage from the Indictment (Docket # 20) are MOOT.

SO ORDERED.

    /s/ George Z. Singal
    United States District Judge

Dated this 18th day of February, 2009.